In re The CHARTER COMPANY,
et al., Debtors.

SYNTEX CORPORATION, et
al., Appellants,

v.

The CHARTER COMPANY, et
al., Appellees.

NORTHEASTERN PHARMACEUTICAL
AND CHEMICAL CO., et al.,
Appellants,

v.

The CHARTER COMPANY, et
al., Appellees.

SYNTEX CORPORATION, et
al., Appellants,

v.

INDEPENDENT PETROCHEMICAL
CORPORATION, Appellee.

NORTHEASTERN PHARMACEUTICAL
AND CHEMICAL CO., et al.,
Appellants,

v.

INDEPENDENT PETROCHEMICAL
CORPORATION, Appellee.

Bankruptcy Nos. 84–289–BK–J–GP to
84–332–BK–J–GP and
85–1033–BK–J–GP.
Nos. 87–22–Civ–J–12, 87–93–Civ–J–12,
87–319–Civ–J–12 and
87–320–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 14, 1987.

Deborah L. Fletcher, Benjamin C. Acker-ly, Hunton & Williams, Richmond, Va., Haywood M. Ball, Thomas M. Donahoo, Donahoo, Donahoo, & Ball, Jacksonville, Fla., for Syntex Corp., Syntex (U.S.A.) Inc., Syntex Laboratories, Inc., Syntex Agribusiness, Inc.

Myron Trepper, Levin & Weintraub & Crames, New York City and Stephen D. Busey, James J. Taylor, Jr., Smith & Hulsey, Jacksonville, Fla., for Charter Company, et al. and Independent Petrochemical Corp.

Edwin Michaels, John Lee, Bernard Bortz, Milton Turkel, Ted L. Perryman, Roberts, Perryman, & Bomkamp, P.C., St. Louis, Mo., for Northeastern Pharmaceutical & Chemical Co., et al.

## ORDER AFFIRMING BANKRUPTCY COURT ORDERS

MELTON, District Judge.

This cause is before the Court in the form of consolidated appeals of two rulings of the United States Bankruptcy Court for the Middle District of Florida, dated December 5, 1986 and January 30, 1987, disallowing the contingent claims of Syntex Corporation, Syntex (U.S.A.) Inc., Syntex Laboratories, Inc., and Syntex Agribusiness, Inc. (collectively "Syntex") and Northeastern Pharmaceutical and Chemical Co., Edwin Michaels, John Lee, Milton Turkel, and Bernard Bortz (collectively "NEPACCO") against The Charter Company, Charter Oil Company, and Charter International Oil Company (collectively "Charter") and against Independent Petrochemical Corporation ("IPC"). After deliberation and consideration of the briefs filed in these matters, the records on appeal, and the oral arguments of counsel, the Court finds that the orders of the Bankruptcy Court should be affirmed.

On April 20, 1984, Charter and IPC filed petitions in the Bankruptcy Court for reorganization under Chapter 11 of the Bankruptcy Code. Syntex and NEPACCO timely filed contingent proofs of claim in the Bankruptcy Court seeking contribution, reimbursement, or indemnification from Charter and IPC. These claims arise out of lawsuits against Syntex and NEPACCO over injuries to persons and to property, and cleanup costs, allegedly caused by the disposal of dioxin bearing waste in Missouri.[1] Syntex's and NEPACCO's proofs of claims include contingent claims for contribution recoverable from Charter and IPC pursuant to § 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act of 1986 (jointly "CERCLA"). Syntex's proofs of claim also assert contingent claims for reimbursement of response costs recoverable from Charter and IPC pursuant to § 107(a)(4) of CERCLA.

The Bankruptcy Court, over the objections of Syntex and NEPACCO, disallowed the contingent proofs of claim of Syntex and NEPACCO against Charter and against IPC on the ground that the claims are for reimbursement or for contribution, are contingent, and therefore must be dis-

---

1. In all these lawsuits, NEPACCO and Syntex are alleged to have collectively owned, actively managed and controlled the manufacturing facility at which the waste was generated, and to have been involved in arrangements for its disposal. The proofs of claim seek contribution and indemnity with respect to all of the lawsuits, without regard to whether Charter and IPC are parties in such actions. (Charter and IPC are, or were, codefendants with NEPACCO and Syntex in many but not all of those actions.) At the time at which the Bankruptcy Court disallowed the proofs of claim, no judgments had been entered in any of the lawsuits, and neither NEPACCO nor Syntex had made any payment to any of the dioxin claimants for which contribution or indemnity is sought.

allowed pursuant to § 502(e)(1)(B) of the Bankruptcy Code. Neither Charter nor IPC presented evidence other than to tender to the Court the contingent proofs of claim of Syntex and NEPACCO. The contingent proofs of claim of Syntex and NEPACCO do not establish whether Syntex and NEPACCO are liable with Charter or IPC on the claims.

The present appeals pose four issues: (1) the propriety of applying § 502(e)(1)(B) to the "indemnification" claims by Syntex and NEPACCO against IPC;[2] (2) the propriety of applying § 502(e)(1)(B) to the claims against Charter and IPC which arise from response costs incurred by Syntex pursuant to CERCLA; (3) the propriety of applying § 502(e)(1)(B) to the claims by Syntex and NEPACCO against IPC; and (4) resolution of conflict, if any, between § 502(e)(1)(B) and the relevant sections of CERCLA.

Both statutes at issue in this case are of recent vintage and the case law is still developing. The bankruptcy statute, § 502(e)(1)(B), provides (in relevant part):

> [T]he court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor on or has secured the claim of a creditor to the extent that—
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution....

11 U.S.C. § 502(e)(1)(B) (1982). Chief Bankruptcy Judge Paskay recently delineated the analytical framework for application of this section, as follows:

> (1) the claim must be one for reimbursement or contribution, (2) the entity asserting the claim for reimbursement or contribution must be liable with the debtor on the claim, and (3) the claim must be contingent at the time of its allowance or disallowance.

*Matter of Provincetown–Boston Airlines, Inc.,* 72 B.R. 307, 309 (Bankr.M.D.Fla. 1987). The Court adopts this three part framework as a useful tool to evaluate the objections based on § 502(e)(1)(B).

The first relevant section of CERCLA, § 107(a)(4)(B), reads:

> [A]ny person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
>
> (B) any other necessary costs of response incurred by other person consistent with the national contingency plan....

42 U.S.C. § 9607(a)(4)(B) (1982). The other relevant section, § 113(f)(1), reads (in relevant part):

> Any person may seek contribution from any other person who is liable or potentially liable under section 107(a), during or following any civil action under section 106 or under section 107(a). Such claims ... shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this section shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 106 or section 107.

*Superfund Amendments and Reauthorization Act of 1986,* Pub.L. 99–499, 99th Cong., 2d Sess., § 113(b), 100 Stat. 1613, 1647 (1986) (to be codified at 42 U.S.C. § 9613(f)(1)). The legislative history of this section clearly states: "contribution claims will be resolved pursuant to Federal common law." H.Rpt. No. 253(I) (Energy & Commerce Committee), 99th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S.Code

---

**2.** For simplicity of expression, the contingent proofs of claim are referred to here as "claims". Additionally, the issues are described in the manner in which they are framed by the parties' briefs. To the extent that any party has adopted the argument of another party or asserts the application of an argument to a party other than one mentioned by name in this order, the Court believes the discussion herein covers every combination of party and argument in these appeals.

Cong. & Admin.News 2835, 2862 [hereinafter H.Rpt. I]; *see also* H.Rpt. No. 253(III) (Judiciary Committee), 99th Cong., 1st Sess. 19 (1985), *reprinted in* 1986 U.S. Code Cong. & Admin.News 3038, 3042 [hereinafter H.Rpt. III]; H.Rpt. No. 253(V) (Public Works & Transportation Committee), 99th Cong., 1st Sess. 24 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin. News 3124, 3147 [hereinafter H.Rpt. V]; H.Conf.Rpt. No. 962, 99th Cong., 2d Sess. 222 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276, 3315.

Against this statutory background, the Court will address each major issue raised by these appeals.

## I. *Application of § 502(e)(1)(B) to "Indemnification" Claims Against IPC*

Syntex complains that its claims do not fall within the gambit of § 502(e)(1)(B). Tracking the three-step analysis from *Provincetown–Boston Airlines,* Syntex concedes the contingent nature of the claims, but asserts that the claims are indemnification, which is reimbursement but not (in its view) in a form that makes Syntex and NEPACCO liable on the debt with IPC. This argument regarding indemnification is interesting, but not availing. One defect appears plain on the face of the argument. Syntex and NEPACCO labelled their claims as ones for "contribution, reimbursement *or* indemnification" without certainty or specificity as to which type of action is asserted by each claim. This Court cannot determine which, if any, claims are solely for indemnification. Syntex and NEPACCO seek to place the burden of identifying the claims on IPC, but their own characterization of these claims renders this attempt fruitless. By acknowledging that alleged claims for indemnification also could be reimbursement and contribution claims, Syntex and NEPACCO assumed responsibility for distinguishing those claims which could not be characterized in a manner that subjects the claims to disallowance pursuant to § 502(e).

■ Regardless of the label attached to the claims by Syntex and NEPACCO, § 502(e)(1)(B) provides for their disallowance. As the parties concede, a claim for indemnity is a claim for reimbursement. The issue raised turns on whether Syntex or NEPACCO are liable on the debt with IPC—whether are "entit[ies] that [are] liable with the debtor on a claim". A successful suit for indemnification will equitably shift full liability to IPC for those expenses incurred by Syntex and NEPACCO as between those parties. The suit, however, will not affect the liability of Syntex and NEPACCO to the litigants in the underlying tort actions. Syntex and NEPACCO would not be entitled to stay payment of the underlying judgments until indemnification liability is established; moreover, Syntex and NEPACCO would not be entitled to refuse to honor the underlying judgments to the extent of any deficiency in the amount received in execution of a judgment against IPC. This last fact is crucial because deficiencies could be reasonably predicted to occur with frequency when bankruptcy proceedings have been instituted by the alleged tortfeasor against whom indemnity is sought. From this perspective the Court perceives that even those claims which squarely fit the legal description of "indemnification" are claims for which Syntex and NEPACCO remain liable with the alleged debtor, IPC. *Glover v. Johns–Manville Corp.,* 662 F.2d 225, 229–30 (4th Cir.1981) (party must demonstrate that it was under compulsion to satisfy claim of original plaintiff in order to be eligible for indemnity); *see GAB Business Serv., Inc. v. Syndicate 627,* 809 F.2d 755, 760 (11th Cir.1987) (settling party must demonstrate actual liability, or potential liability and lack of objection to terms of settlement by alleged indemnitor, in order to be eligible for indemnification). This conclusion comports with the plain language of § 502(e)(1), language which "is broad enough to encompass any type of liability shared with the debtor, whatever its basis." *Matter of Baldwin–United Corp.,* 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985).

■ Syntex proposes that the policy of § 502(e) is directed to the prospect of tying up more than the amount of a claim from the bankrupt's estate, *see id.* at 895, and

this policy is not threatened by refusing to disallow contingent indemnification claims. The Court disagrees with this assessment. It is incomplete. A better view holds that the bankrupt's estate also should not be burdened by estimated claims of a contingent nature when the underlying claimant has recourse against the entity who is liable on the claim with the debtor. *Cf.* 3 Collier on Bankruptcy ¶ 502.05[1] (15th ed. 1979) (discussing legislative history, predecessor statutes, and interaction within Bankruptcy Code). In essence, § 502(e)(1)(B) balances the interests of the bankrupt, direct creditors of the bankrupt, and codebtors of the bankrupt. This last group asserts a derivative right against the debtor, based on the debt both parties owe to a third party. The codebtor gains entitlement to assert reimbursement and contribution claims only to the extent the codebtor makes these claims certain, that is, removes the third party from the debt relationship by compensating that party. *See id.* Otherwise, the bankrupt's estate would be unable to distribute assets to direct creditors because the monies are being held in anticipation of claims which may never materialize. Since the third party would still hold a right against the codebtor, the interests balance against the codebtor and in favor of the other creditors. *See Matter of Fox,* 64 B.R. 148, 150–51 (Bankr.N.D.Ohio 1986).

In sum, characterization of the disputed claims as "indemnification" fails to avoid the operation of § 502(e)(1)(B) for two reasons. First, Syntex and NEPACCO failed to establish that their claims would be solely for indemnification. Second, indemnification claims are, by their nature, claims upon which the party seeking indemnification is liable with the party from whom indemnification is sought, the debtor in bankruptcy. Consequently, the plain language of § 502(e)(1)(B) requires disallowance of the claims.

## II. *Application of § 502(e)(1)(B) to Response Cost Claims Against Charter & IPC*

Syntex proposes two distinct arguments for preserving its claims against Charter and IPC for response costs incurred pursuant to CERCLA. First, Syntex argues that claims based on § 107(a)(4)(B) are direct claims in the nature of equitable restitution. So described, the claims do not fall within the scope of disallowed claims as defined by § 502(e)(1)(B) of the Bankruptcy Code. Second, Syntex argues that Congress did not intend for claims for contribution pursuant to the newly-enacted § 113(f) of CERCLA to be subject to disallowance under the Bankruptcy Code. This statutory conflict argument is addressed *infra* Part IV.

The first argument erroneously assumes the continued viability of implied contribution claims pursuant to § 107(a)(4).[3] The statutory revision enacted in 1986 replaced those implied claims with a statutory contribution cause of action. *See* H.Rpt. I, *supra,* 1986 U.S.Code Cong. & Admin. News at 2861 ("This section clarifies and confirms the right ... to seek contribution" recognized by courts); H.Rpt. III, *supra, id.* at 3041 (new section amended to "ratify current judicial decisions" on court authority to apportion costs among violators); H.Rpt. V, *supra, id.* at 3147 (new section "expressly recognizes the right to contribution"). The savings clause of the new section specifically refers to actions for contribution other than ones pursuant to §§ 106 and 107, an indication that the section wholly replaces the previous federal common law developed for § 107(a). Additionally, the remainder of § 113(f) sets forth an intricate scheme for balancing contribution rights and settlement procedures

---

**3.** The argument also assumes that private contribution claims can be described as "equitable restitution". The authority cited for this proposition, however, holds that *government* recovery of response costs can be described in this manner. *E.g., United States v. NEPACCO,* 810 F.2d 726, 749 (8th Cir.1986). Given that CERCLA incorporates significant differences between government and private actions, *see id.* at 747–48, that authority does not provide necessary support for the assumption concerning private contribution actions. Because resolution of this question does not affect the present disposition, the Court expresses no opinion on the nature of private contribution claims.

with the United States or the states. Accordingly, the comprehensive federal statute displaced the federal common law remedy. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623–24, 69 L.Ed.2d 435 (1981) (elaborate enforcement provisions in federal statute bar implied judicial remedies under same statute); *Milwaukee v. Illinois,* 451 U.S. 304, 317, 101 S.Ct. 1784, 1792–93, 68 L.Ed.2d 114 (1981) (comprehensive federal regulatory program occupied field previously governed by federal common law remedies). This Court, therefore, need to look only to § 113(f) suits under CERCLA on the issue of response costs.

■ On their face contingent section 113(f) claims would seem to fall within the scope of those subject to disallowance pursuant to § 502(e)(1)(B). The claims are denominated "contribution", the same word used in the Bankruptcy Code. *Cf. Perrin v. United States,* 444 U.S. 37, 43, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) (construction of statutory term at its ordinary, common meaning includes reference to its use in other federal statutes). No special relationship between CERCLA and the Bankruptcy Code justifying a special meaning for the term is evident from the face of either statute or the respective legislative histories. Other courts have disallowed contingent contribution claims based on federal statutes. *E.g., Matter of Provincetown–Boston Airlines,* 72 B.R. at 310 (contribution under federal securities law). Thus, contingent section 113(f) claims would appear to be disallowed unless the Court finds the two statutes, the Bankruptcy Code and CERCLA, are in conflict and that conflict should be resolved in favor of CERCLA. *See infra* Part IV for the resolution of this issue.

One potential argument should be joined and rejected at this point. Arguably, if section 107(a) implied contribution claims were not subject to disallowance because they were "in the nature of equitable restitution" (an issue not decided by this Court), then section 113(f) claims could be described as codified versions of the earlier

actions and therefore entitled to the same privilege. Support for this argument could be gleaned from the previously cited passages in which Congress expressly recognized the prior case law and expressed an intention to ratify it. This ratification, however, does not successfully adopt all holdings of the prior cases. *Shearson/American Express, Inc. v. McMahon,* —— U.S. ——, 107 S.Ct. 2332, 2343, 96 L.Ed.2d 185 (1987) (legislative history's endorsement of named case, for the existing law articulated in that case, does not demonstrate extent to which Congress intended to preserve all rulings related to that case). The Court should not presume that Congress would effect such a significant policy statement regarding bankruptcy law through this sort of roundabout means. *See id.* (refusing to extend named case to different statute based solely on reference to case in legislative history).

### III. *Application of § 502(e)(1)(B) to Claims Against IPC*

■ NEPACCO argues that invocation of § 502(e)(1)(B) depends on a Bankruptcy Court finding that the debtor is entitled to a discharge. This argument lacks merit. Section 502(e) contains no limitation regarding its application to chapter 11 cases. Moreover, section 103(a) of the Bankruptcy Code clearly provides that chapter 5, including § 502(e), applies in all cases under chapter 11, without reference to the debtors' entitlement to a discharge. The legislative history is similarly unambiguous on the application of chapter 5 to all proceedings under chapter 11. S.Rpt. No. 989, 95th Cong., 2d Sess. 3 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5789. The Court therefore will not graft the proposed limitation on to the statute.

### IV. *Conflicts Between § 502(e)(1)(B) and Contribution Pursuant to CERCLA*

Syntex and NEPACCO vigorously assert that the right of contribution pursuant to CERCLA conflicts with § 502(e)(1)(B). The conflict allegedly arises because disallowance of contingent contribution claims under CERCLA will thwart the statutory pur-

pose of encouraging private parties to promptly remove and remedy the release of hazardous substances into the environment. This conflict should be resolved in favor of CERCLA, they argue, on the basis that it is the later enacted and more specific statute. These canons of construction, however, are not as useful as an inquiry into the particular doctrines surrounding the potential conflict between bankruptcy and nonbankruptcy law.

The Supreme Court's ruling in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), provides an instructive starting point. In that case the Court construed § 554(a) of the Bankruptcy Code to lack authority to authorize an abandonment of property in contravention of state law that is reasonably designed to protect the public health or safety from identified hazards. *Id.* at 506–07, 106 S.Ct. at 762–63. In dicta, the Court buttressed its interpretation of congressional intent in enacting the Bankruptcy Code by reference to "repeated congressional emphasis on its 'goal of protecting the environment against toxic pollution.'" *Id.* at 505, 106 S.Ct. at 762 (quoting *Chemical Mfrs. Ass'n, Inc. v. Natural Resources Defense Council*, 470 U.S. 116, 143, 105 S.Ct. 1102, 1116–17, 84 L.Ed.2d 90 (1985)). The Court cited CERCLA as an example of this emphasis. The Court viewed unlikely the situation that Congress would abrogate these environmental laws without explicit reference in light of the historic judicial doctrine preceding the Bankruptcy Code which also would have disallowed the abandonment.

Syntex and NEPACCO cite *Midlantic National Bank* as an illustration of the primacy afforded environmental protection interests relative to bankruptcy policy. The Court perceives a different lesson to be learned from the case. It outlined a method of resolving potential conflicts between bankruptcy law and nonbankruptcy law, a method completed by reference to *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). This second case endorsed rejection of collective bar-gaining agreements pursuant to § 365(a) of the Bankruptcy Code, a result seemingly in conflict with national labor policy.

The *Midlantic–Bildisco* method takes a historical approach to the Bankruptcy Code. If the section at issue codifies a judicially developed rule that subjected the exercise of bankruptcy power to the authority of nonbankruptcy law, then the nonbankruptcy statute naturally prevails. *See Midlantic National Bank*, 474 U.S. at 501, 106 S.Ct. at 759 (relying on pre-Bankruptcy Code judicial rules on abandonment power). On the other hand, the Bankruptcy Code will be given precedence when the section at issue reflects considered congressional judgment concerning the desirability of creating an exception to the effect of the bankruptcy laws, but the present instance does not fall within an exception. *See Bildisco*, 465 U.S. at 522–23, 104 S.Ct. at 1194 (contrasting exception in Bankruptcy Code for collective bargaining agreements under Railway Labor Act to congressional silence on National Labor Relations Act agreements).

Applying these principles to § 502(e), the Court notes the absence of any history to imply a nonbankruptcy exception to the section on behalf of CERCLA contribution claims. *See* 3 Collier on Bankruptcy ¶ 502.05 (15th ed. 1979). In fact, the subsection at issue, § 502(e)(1)(B), appears to reflect the considered congressional judgment that claims for reimbursement or contribution normally will be allowed *except* when the claim is contingent as of the time of allowance. *See* S.Rpt. No. 989, 95th Cong., 2d Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851. Since CERCLA does not expressly create an exception to § 502(e)—nor can the provisions of the statute be reasonably construed to create a clear and manifest implied exception—the provision must be interpreted on its face to disallow contingent CERCLA contribution claims. *See Rodriguez v. United States*, —— U.S. ——, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987) (implied repeal of statutes not favored and should be found only if intent to repeal is clear and manifest).

 The alleged conflict with CERCLA's policy of promoting cleanup of the enviroment likewise is specious. Section 113(f)(2) subordinates the private right of contribution to settlements with the United States or the states. The settlement protection is designed to encourage parties to resolve liability as quickly as possible. This settlement concern dominates the legislative history of § 113(f). *See* H.Rpt. I, *supra,* 1986 U.S.Code Cong. & Admin.News at 2862; H.Rpt. III, *supra, id.* at 3042; H.Rpt. V, *supra, id.* at 3147. This push to settlement readily harmonizes with the goal of § 502(e) to ascertain with certainty the amount of a codebtor's claim. The Court observes that failure to disallow contingent CERCLA contribution claims could provide a "backstop" for the entity asserting the claim, permitting that entity an opportunity to stretch out litigation of its own liability without risk of losing the claim against the bankrupt's estate. Moreover, allowance of contingent CERCLA contribution claims could significantly inhibit accomplishment of the Bankruptcy Code's goal of expeditiously rehabilitating the debtor and paying out ascertainable claims to creditors as quickly as possible. *See Bildisco,* 465 U.S. at 527–28, 104 S.Ct. at 1197. Both results would put CERCLA and the Bankruptcy Code at odds.

The point to stress is that CERCLA and § 502(e) do not irreconcilably conflict. The Court can reasonably envision circumstances under which the statutes work in harmony, and these circumstances are at least as likely as the scenario of conflict painted by Syntex and NEPACCO. Consequently, the Court will not force aside either statute. This decision fits well with the guidance provided by the Supreme Court on the subject of reconciling apparent conflicts between bankruptcy law and nonbankruptcy law.

The Court emphasizes that the present decision does not foreclose any remedy that the Bankruptcy Code may afford Syntex or NEPACCO to pursue reimbursement, contribution or indemnification at a later date. The present decision finds only that CERCLA and § 502(e) of the Bankruptcy Code do not conflict for the purpose of disallowing contingent claims for reimbursement or contribution. Whether CERCLA and the Bankruptcy Code may conflict if and when valid claims do mature is a question that is not yet ripe, *see Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir.1984) (describing ripeness doctrine), and does not have to be decided in order to affirm the Bankruptcy Court's decision to disallow contingent claims.

Accordingly, it is

ORDERED AND ADJUDGED:

That the orders of the Bankruptcy Court, dated December 5, 1986, and January 30, 1987, are affirmed in all respects.