**In re WEDTECH CORP., f/k/a Welbilt Electronics Die Corp., Debtor.**

**Bankruptcy No. 86 B 12366 (HCB).**

United States Bankruptcy Court, S.D. New York.

June 6, 1988.

As Corrected June 8 and 10, 1988.

Strook & Stroock & Lavan by Daniel Golden, New York City, for the Committee of Unsecured Creditors.

Willkie, Farr & Gallagher by Robert J. Kheel, New York City, Richard I. Miller, Associate General Counsel, Peat Marwick Main & Co., New York City, for KMG Main Hurdman.

## DECISION ON OBJECTION TO CLAIM AND CROSS MOTION TO MODIFY STAY

TINA L. BROZMAN, Bankruptcy Judge.

In an omnibus motion Wedtech Corp. (Wedtech) and its Committee of Unsecured Creditors seek the disallowance of several claims filed against Wedtech's estate. Judge Howard C. Buschman III recused himself from the objection to the claim of KMG Main Hurdman (KMG) which is the subject of this decision. KMG has cross-moved for relief from the automatic stay pursuant to section 362(d) of the Code.

### I.

Wedtech filed a petition under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the Code), on December 15, 1986. It has continued to operate its business pursuant to sections 1107 and 1108 of the Code. In August 1987, it filed a plan of liquidation.

At least for purposes of resolving these motions, the parties have raised no factual disputes. Prior to bankruptcy, Wedtech operated as a military contractor manufacturing precision systems and parts primarily for the Defense Department. Wedtech qualified for a program through the Small Business Administration Section 2[8](a) and therefore received government contracts without having to bid for them. During the years 1983 and 1986, it issued and sold stock, debentures and senior subordinated notes through public offerings. In connection with these sales, Wedtech filed registration statements and prospectuses with the Securities and Exchange Commission.

In 1986, federal and state prosecutors in New York, Baltimore and Washington com-

Pollner, Mezan, Stolzberg, Berger & Glass, P.C. by John Reichman, New York City, for Wedtech Corp.

menced a series of investigations into Wedtech's activities. This led to Wedtech's public disclosure in late 1986 that it had issued fraudulent invoices to the government, Wedtech's discharge of about 1500 employees and its bankruptcy filing. Subsequent investigations revealed and the new management admitted that the financial statements in the registration statements and prospectuses were false and that Wedtech had been the victim of fraud and embezzlement by its former management, consultants and others.

As a result of these disclosures, several individual shareholders of Wedtech sued the former officers and directors, underwriters and accounting firms, including KMG, in the Southern District of New York, alleging securities law violations and common law fraud. These actions have been consolidated by order of Judge Leonard B. Sand.[1] Four other actions have been instituted against KMG by holders of shares and notes issued by Wedtech, two actions in the Southern District of New York,[2] one in the southern District of Texas,[3] and one in the Northern District of Illinois.[4] Wedtech is not a named party in any of these actions. All actions (collectively, the Civil Actions) have been consolidated before Judge Sand for discovery purposes. In addition, Wedtech has brought an adversary proceeding against KMG sounding in fraud, malpractice, breach of fiduciary duty, money had and received and unjust enrichment. Wedtech seeks compensatory damages of $20,000,000 and punitive damages of $50,000,000. The reference of that adversary proceeding has been withdrawn by and to Judge Sand on consent of the parties.

KMG has filed a proof of claim against Wedtech's estate for reimbursement for any monies it ultimately pays as a result of any judgment. The proof of claim also indicates that Wedtech may be liable to KMG for fraud, misrepresentation and/or breach of contract arising out of the engagements of KMG. (The Civil Actions all involve claims arising out of these same engagements.) Wedtech moves for disallowance of KMG's claim pursuant to Code sections 502(b)(1) and 502(e)(1)(B). KMG opposes the motion and seeks to modify the automatic stay to permit it to assert counterclaims and/or third party claims against Wedtech in all of the Civil Actions as well as the adversary proceeding, and in any other actions which may be commenced. Wedtech consents to the lifting of the stay for the limited purpose of allowing KMG to assert all of its counterclaims in the adversary proceeding for purposes of setoff.

## II.

At the argument on these motions, KMG urged that consideration of the motion to disallow is premature because Wedtech consents to modification of the stay in the adversary proceeding and because this is a liquidation case that must remain open at least until Wedtech's adversary proceeding is resolved. KMG argues, not without some force, that disallowance of its claim at this time is unnecessary inasmuch as the claim will be fixed if the automatic stay is lifted. The court is persuaded for a number of reasons that the motion should nevertheless be entertained.

First, disallowance because of the contingency of a codebtor's claim is effectively without prejudice. For the Code itself provides in section 502(e)(2) that a contingent claim for reimbursement which is fixed after the commencement of the case is to be allowed or disallowed in the same manner as if fixed prior to bankruptcy and provides further in section 502(j) that a claim that has been disallowed may be reconsidered for cause. Second, KMG's claim, when fixed, will likely encompass in large part sums which constitute reimbursement on

---

1. *In re Wedtech Securities Litigation*, 86 Civ. 8628 (LBS).

2. *Gibraltar Savings, et al. v. Bear, Stearns Inc., et al.*, 87 Civ. 2835 (LBS) and *United High Income Fund, Inc., et al. v. Fred Newberger, et al.*, 87 Civ. 5839 (LBS).

3. *Aim Advisors Inc., et al. v. Bear Stearns & Co. Inc., et al.* 87 Civ. 5762 (LBS).

4. *Asher, et al. v. Mariotta, et al.*, 87 Civ. 5763 (LBS).

account of a claim for damages arising from the purchase or sale of a security of the debtor, which reimbursement claim is subject to subordination to the claims of creditors pursuant to section 510(b) of the Code. As a result, KMG may choose not to seek reconsideration of its later fixed claim if that be disallowed now. Third, failure to disallow the claim now, if that be otherwise appropriate, might impede the ability of the debtor to make any interim distribution to creditors and will hinder the debtor in its efforts to confirm its liquidating plan. Since the claim would be an allowed claim, it would have to be estimated for purposes of allowance and the debtor would be forced to bring on a motion to subordinate it. Thus, if the claim is subject to disallowance, its disallowance at this time will aid in the administration of the Wedtech estate without harming KMG.

### III.

Section 502(a) provides that a proof of claim is deemed allowed unless a party in interest objects. Wedtech has objected to KMG's claim as a matter of law based upon section 502(e)(1)(B).[5] Three considerations must be established to disallow a claim under this section. "(1) The claim must be one for reimbursement or contribution; (2) the entity asserting the claim for reimbursement or contribution must be 'liable with the debtor' on the claim; and (3) the claim must be contingent at the time of its allowance or disallowance." *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr.M.D.Fla.1987); *see also Syntex Corp. v. Charter Co. (In re Charter Co.)*, 81 B.R. 644 (M.D.Fla.1987); *In re Wedtech*, 85 B.R. 285, 288 (Bankr.S.D.N.Y. 1988).

KMG challenges the applicability of section 502(e)(1)(B) on two theories, that joint tortfeasors are not within its embrace and that part of KMG's claim is a direct fraud or breach of contract claim for damages

flowing from whatever liability attaches to KMG as a result of the resolution of the Civil Actions. Neither argument is persuasive.

### A. Joint Tortfeasors Are Within the Reach of § 502(e)(1)(B)

■ The short answer to KMG's assertion that nothing in the Code or the legislative history reflects an intention that section 502(e)(1)(B) apply to disallow the contingent claim of a joint tortfeasor is that the subsection itself suggests that the joint tortfeasor's claim is within its embrace. The section disallows a contingent claim for "contribution," a concept clearly associated with the law of torts. And it disallows the claim of "an entity that is liable with the debtor", not merely an entity that is contractually liable with the debtor. *See In re Baldwin–United Corp.*, 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985). But even if KMG were correct in its assertion, that would not compel a declaration that the joint tortfeasor is free from the reach of the statute. " '[T]he fact that [a statute] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.' " *Sedima v. Imrex*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1984), quoting *Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984) *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (*per curiam*). The anomalous result urged by KMG is that the contingent claim of a surety or guarantor would be disallowed while the equally contingent claim of the debtor's joint tortfeasor would be allowed.

Moreover, the weight of the judicial authority concludes that joint tortfeasors' contingent claims must be disallowed. In *Baldwin–United*, the court disallowed the claims of brokers of the debtor's deferred annuities who filed proofs of claim for con-

---

**5.** Section 502(e)(1) provides:

Notwithstanding subsections (a), (b) and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has se-

cured, the claim of a creditor, to the extent that–...

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution;

tribution in regard to the deferred annuities holders' claims against them. The brokers had argued unsuccessfully that as joint tortfeasors they were not entities liable with the debtor on a claim. To similar effect is *Provincetown–Boston Airlines,* 72 B.R. 307. There, E.F. Hutton argued that its claim for contribution for potential liability arising out of the public offering of the debtor's stock should not be disallowed because E.F. Hutton never voluntarily accepted the responsibilities of the debtor and was therefore not a codebtor. The court disagreed and disallowed the claim. In *Charter,* 81 B.R. 644, the district court affirmed the bankruptcy court's disallowance of the contingent claims for contribution, reimbursement, or indemnity of joint tortfeasors liable with the debtor for the damages caused by and clean-up costs for dioxin bearing waste.

Most recently, Judge Buschman in this very case disallowed the indemnification claims of two of Wedtech's former directors in the Civil Actions. He held that "the co-liability requirement is to be interpreted to require a finding that the causes of action in the underlying lawsuit assert claims upon which, if proven, the debtor could be liable but for the automatic stay." *Wedtech Corp.,* slip op. at 7. This is the proper standard for determining whether an entity is liable with the debtor.

The only contrary authority is the decision in this district in *Fox & Co. v. Saxon Industries (In re Saxon Industries, Inc.),* 43 B.R. 64 (Bankr.S.D.N.Y.1984), *aff'd* No. 84 Civ. 7563 (S.D.N.Y. April 9, 1985). In *Saxon,* the bankruptcy court lifted the automatic stay to permit accountants who had been sued by the debtor and also by purchasers of the debtor's securities to counterclaim against the debtor and to implead the debtor as a third party in class actions brought against the accountants by purchasers of the debtor's securities. In weighing whether to lift the stay, the judge considered the debtor's argument that the claims were subject to disallowance. He noted, without discussion, that the disallow-

ance of contingent claims relates only to codebtors, sureties or guarantors. The district court in affirming the modification of the stay stated that it was unnecessary for the bankruptcy judge to have resolved the issue under section 502(e)(1)(B) because no motion to modify the stay had been interposed.

KMG's admonition that the court read section 502(e)(1)(B) consistently with sections 501(b) and 509(a), each of which uses the phrase "an entity that is liable with the debtor" or a close variant, is not misguided. But KMG's conclusion that a joint tortfeasor is not such an entity who may pursuant to section 501(b) file a proof of claim if the underlying creditor does not do so is simply wrong. *See* 3 L. King, *Collier on Bankruptcy,* ¶ 501.02 at 501–11—501–12 and n. 7 (15th ed. 1988) (Fed.R.Bankr.P. 3005, in conjunction with section 501(b), makes clear that anyone, including a joint tortfeasor, who is liable on a debt of the debtor is authorized to file in the name of the creditor). Moreover, section 509(a) does not by its terms exclude joint tortfeasors. If there were some theory by which the joint tortfeasor could claim subrogation, the statute would permit that subrogated claim.

■ Having concluded that joint tortfeasors are within the embrace of section 502(e)(1)(B), we proceed to the claims against KMG. Five actions are pending against KMG for which it seeks reimbursement. The complaint in the shareholder action, *In re Wedtech Securities Litigation,* No. 86 Civ. 8628 (LBS), alleges that KMG (i) knowingly or recklessly failed to conduct proper audits in violation of section 10(b) and 20 of the Securities Exchange Act of 1934 (the Exchange Act) and rule 10b–5, (ii) issued opinions on Wedtech's financial statements stating that they were presented fairly in accordance with generally accepted accounting principles and auditing standards, when in fact they were false and misleading in violation of sections 11 and 15 [6] of the Securities Act of 1933 (the

---

**6.** Although the complaint alleges that KMG is liable for violations of section 15 of the Securi-

ties Act, which applies only to controlling per-

Securities Act), (iii) participated in the concealment of Wedtech's financial condition in connection with the sale and dissemination of securities in violation of sections 12(2) and 15 of the Securities Act, and (iv) committed common law fraud and negligent misrepresentation.

Wedtech is allegedly an issuer as defined by section 2(4) of the Securities Act. As such, it can be liable under section 11 of the Securities Act if it files a registration statement which becomes effective and which contains an untrue statement of material fact or omits a material statement necessary to make the statements made not misleading. *Greenapple v. Detroit Edison Co.*, 468 F.Supp. 702, 708 (S.D.N.Y. 1979), *aff'd*, 618 F.2d 198 (2d Cir.1980). An issuer may also be liable as a seller under section 12(2) of the Securities Act. *Junker v. Crory*, 650 F.2d 1349, 1361 (5th Cir. Unit A 1981). So too can Wedtech be liable under section 10(b) of the Exchange Act and rule 10b–5 promulgated thereunder which prohibit the use of manipulative and deceptive devices through interstate commerce in connection with the sale of any security. *Selk v. St. Paul Ammonia Products, Inc.*, 597 F.2d 635, 638 (8th Cir. 1979), citing *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 382–83 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) (corporation can be liable under section 10(b) of the Exchange Act for a materially false or misleading proxy statement.)

Wedtech may also be directly liable for common law fraud and negligent misrepresentation since it was Wedtech's registration statements, prospectuses and financial statements that are the basis for the underlying allegations. Thus, if KMG is liable in the shareholder action, Wedtech can be co-liable.

KMG is also a defendant in *United High Income Fund Inc. v. Neuberger*, 87 Civ. 5839 (LBS). This action was instituted by eight purchasers of Senior Subordinated Notes of Wedtech (Wedtech Notes). The Wedtech Notes were sold in a public offering on August 22, 1986. KMG is charged

with common law fraud and with having certified Wedtech's financial statements without qualification when in fact they were materially inadequate in violation of sections 11, 12 and 17 of the Securities Act, and section 10(b) of the Exchange Act and rule 10b–5. Each claim has been previously addressed with the exception of section 17(a) of the Securities Act. Section 17(a) is worded very similarly to rule 10b–5 and the same analysis would apply.

*Gibralter Savings v. Bear, Stearns & Co. Inc.*, 87 Civ. 2835 (LBS) was instituted by three purchasers of Wedtech Notes and alleges violation of the same laws as *United High Fund, supra*. Thus, Wedtech can be co-liable on this action as well.

In *Aim Advisors, Inc. v. Bear, Sterns & Co., Inc.*, 87 Civ. 1361 (LBS) two investment advisor companies who purchased Wedtech Notes in reliance upon the representations in the prospectus and registration statement concerning the 1986 public offering, charge KMG with violating sections 11 and 12(2) of the Securities Act, section 10(b) of the Exchange Act, and the antifraud provisions of the Texas Blue Sky statute. Texas Rev.Civ.Stat.Ann. Art. 581–33 (Vernon Supp.1986). It is also alleged that KMG is guilty of common law fraud and negligence. The only allegation not previously considered is the violation of the Texas Blue Sky law. However, those laws are substantially similar to the federal securities laws and neither Wedtech nor KMG has asserted that co-liability does not exist.

Finally, *Asher v. Mariotta*, 87 Civ. 3205 (LBS) was instituted by shareholders of Wedtech common stock who purchased their shares on the open market. The allegations mirror those outlined above but also charge KMG with violating the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. Ch. 121½, §§ 262 and 270(a), and the Illinois Blue Sky laws. As the parties admit, Wedtech can be co-liable on these claims.

█ The *Asher* case differs from the other Civil Actions in one important re-

sons, it is not alleged that KMG was a control-

ling person of Wedtech.

spect. The plaintiffs plead that KMG violated all subsections of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations Act (RICO). The complaint alleges that KMG is a person within the meaning of 18 U.S.C. § 1961(3) and that Wedtech is an enterprise as defined by 18 U.S.C. § 1961(4). As such, Wedtech cannot be liable for violating section 1962(c)[7] which prohibits a person employed or controlled by the enterprise from engaging in specified activity. The Second Circuit has held that "under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity", *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), unless the defendant is both the person and one of a number of entities comprising a single enterprise, *Cullen v. Margiotta*, 811 F.2d 698, 723–30 (2d Cir.), *cert. denied sub nom. Nassau County Republican Committee v. Cullen*, —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *see also Haroco, Inc. v. American National Bank & Trust Co.*, 747 F.2d at 399–402. Since the complaint alleges that Wedtech alone constitutes the enterprise, Wedtech cannot be liable on these claims and this portion of KMG's claim for reimbursement may not be disallowed pursuant to section 502(e).

■ Whether a corporation which is also the enterprise may be liable for engaging in the activities prohibited by section 1962(a)[8] is not as clear. KMG argues that because Wedtech is alleged to be the enterprise it cannot also simultaneously be the "person" for purposes of section 1962(a).

Although our Circuit Court of Appeals has spoken with respect to section 1962(c), it has not decided whether the infiltrated enterprise may also be a person liable under section 1962(a). There is clearly a split in the decisions of this district. Compare *Rush v. Oppenheimer*, 628 F.Supp. 1188 (S.D.N.Y.1985) and *Bingham v. Zolt*, 683 F.Supp. 965 (S.D.N.Y.1988) with *De Muro v. E.F. Hutton*, 643 F.Supp. 63 (S.D.N.Y. 1986) and *Department of Economic Development v. Arthur Andersen & Co.*, 683 F.Supp. 1463 (S.D.N.Y.1988). Several circuit courts have addressed this particular issue, the majority concluding that a single entity which has received income from the racketeering activity can be simultaneously both the "person" and the "enterprise" under section 1962(a). *Schreiber Distributing Co. v. Serv-Well Furniture Co. Inc.*, 806 F.2d 1393, 1398 (9th Cir.1986) (Where the corporation "is the direct or indirect beneficiary of the pattern of racketeering activity, it can be both the 'person' and the enterprise.' "); *Petro–Tech, Inc. v. Western Company*, 824 F.2d 1349, 1360 (3d Cir. 1987) (" '[S]ubsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate ... This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of

---

**7.** Section 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**8.** Section 1962(a) provides:
It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering ... which result is in accord with the primary purpose of RICO ... to reach those who ultimately profit from racketeering, not those who are victimized by it.' " (quoting *Haroco,* 747 F.2d at 402)); *United States v. Hartley,* 678 F.2d 961 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); *Schofield v. 1st Commodity Corp.,* 793 F.2d 28, 32 (1st Cir.1986) ("section 1962(a) does not require a relationship between the person and the enterprise as does section 1962(c), and so it does not require the involvement of two separate identities.") (dictum); *Haroco, Inc. v. American National Bank and Trust Co.,* 747 F.2d at 401 ("[T]he corporate enterprise should be liable where it is the perpetrator, or the central figure in the criminal scheme.") (dictum); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 839 F.2d 782 (D.C.Cir.1988) (dictum); *but see United States v. Computer Sciences,* 689 F.2d 1181 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). We agree with the majority of circuits and find that Wedtech can be co-liable with KMG on the section 1962(a) claim.[9]

## B.  All Claims for Reimbursement Must Be Disallowed

KMG's creative second argument, that its direct claims for fraud and breach of contract are outside the ambit of section 502(e)(1)(B), is predicated upon the distinction drawn in *Seidman & Seidman v. Cenco, Inc. (In re Cenco, Inc. Securities Liti-*

*gation),* 642 F.Supp. 539 (N.D.Ill.1986). But the case is inapposite. The *Cenco* court was asked to determine whether a settlement agreement which explicitly waived an indemnity claim also thereby impliedly waived a tort claim. Given that courts are loath to find a waiver where no intent is manifest, the court understandably drew a distinction between the indemnity and tort claims. *Cenco* does not, however, support the proposition for which it is offered here.

Although KMG fastens a variety of tags to its claims against Wedtech, the claims all seek reimbursement for monies to be expended by KMG in its defense and in satisfying its liability to the various plaintiffs in the Civil Actions. *Cf. Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 457–58 (7th Cir.1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982) (if accountants were defrauded by client into issuing false audit reports which in turn exposed them to liability to class plaintiffs, accountants' claim against client is one for indemnification and money paid to the class plaintiffs is a permissible item of damages).

The use of the word "reimbursement" in the statute cannot be viewed as accidental. It is a broad word which encompasses whatever claims a codebtor has which entitle him to be made whole for monies he has expended on account of a debt for which he and the debtor are both liable. Had Congress meant to limit section 502(e)(1)(B) to claims for indemnification, it could easily have said so. To hold that KMG's direct claims for fraud and breach

9. KMG argues that even if we find that Wedtech as the enterprise can be co-liable under section 1962(a), we still must find that Wedtech could not be liable in the *Asher* action because Wedtech was not sued or alleged to have been liable. Thus, KMG urges that Wedtech could not be liable based upon the complaint. However, the correct standard as set forth previously is not whether Wedtech was actually named as the defendant (for it could not have been by reason of the automatic stay), but whether Wedtech could be liable but for the automatic stay. Here, the allegations are sufficient to suggest Wedtech's co-liability because it is alleged, in sum and substance, that Wedtech was financially benefited by the alleged racketeering activity.

KMG's argument is a good deal more forceful when applied to the issue of whether Wedtech can be co-liable under section 1962(b). The same dispute exists among the courts concerning the ability of an enterprise to be liable under this subsection as under section 1962(a). Resolution of the issue under subsection (b) is not necessary, however, because nothing in the *Asher* complaint suggests that Wedtech acquired or maintained an interest in itself through the fruits of the racketeering activity. In other words, we cannot say that but for the automatic stay, Wedtech could be liable under section 1962(b).

of contract seeking the same relief as the claims for indemnity or contribution are not claims for reimbursement would emasculate section 502(e)(1)(B); in very many cases a codebtor's claim can be recast as a "direct" claim for fraud or breach of contract.

## C. KMG's Claim is Contingent

The resolution of KMG's two challenges to the applicability of section 502(e)(1)(B) leaves only one additional consideration, whether the claim of KMG is contingent. KMG admits that so much of its claim as is not "direct" is contingent. Because we have determined that KMG's so-called "direct" claims are nothing more than reimbursement claims, the conclusion is inescapable that they are also contingent.

## IV.

Wedtech employs one additional theory for disallowing KMG's claim, section 502(b)(1). This section provides that a claim is disallowed to the extent that it is unenforceable against the debtor under applicable non-bankruptcy law for a reason other than its being contingent or unmatured. Wedtech asserts that the federal securities laws govern the issue of indemnification and thus are the applicable law.

■■■ KMG concedes that for the portion of its claim that relates to the Exchange Act and the Securities Act, the federal securities laws govern. However, KMG correctly contends that the federal securities laws do not operate to bar all claims of indemnification as a matter of law, but bar only those claims where the defendant acted with actual knowledge of falsity or reckless disregard for the truth. *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 135 (S.D.N.Y.1974), *aff'd in part, rev'd in part*, 540 F.2d 27 (2d Cir.1976). As stated in *Arden Way Associates v. Boesky*, 664 F.Supp. 863, 865 (S.D. N.Y.1987) (citations omitted), "the crucial 'relevant fact' in determining whether indemnification for violations of the securities laws is available is 'whether the defendant acted with actual knowledge of falsity or reckless disregard for the truth'

... [It] may depend on various questions of fact such as whether a party is personally at fault, actually contributed to an injury, incurred merely vicarious or imputed liability, or had actual knowledge of alleged material misstatements." We have insufficient information to determine at this time whether this portion of KMG's claim should be disallowed pursuant to section 501(b)(1).

■■■ KMG also answers that portions of its claim arise out of a contribution theory, rather than indemnification, and that portions of its claim seek indemnification or contribution for RICO claims, rather than for securities law claims. To the extent contribution is sought for federal securities laws violations, the claim is not disallowable as a matter of law under section 502(b)(1) because contribution is permitted for violations of the securities laws irrespective of whether there is a knowing violation. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 578 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Herzfeld*, 378 F.Supp at 135. However, to the extent KMG seeks contribution for any RICO violations, the claim is disallowed because contribution is not available in a RICO action. *See Minpeco, S.A. v. ContiCommodity Services, Inc.*, 677 F.Supp. 151, 154 (S.D.N.Y.1988); *Seminole Electric Cooperative, Inc. v. Tanner*, 635 F.Supp. 582, 584 (M.D.Fla.1986); *Central Illinois Savings & Loan Association v. Dupage County Bank*, 622 F.Supp. 1493, 1498–1500 (N.D.Ill.1985). We cannot determine whether the claim for indemnity for the RICO violations must be disallowed. We have not had the benefit of full briefing on this issue. Moreover and more important, that determination may turn on whether KMG is ultimately determined to be vicariously liable for the acts of others or whether it is determined to be liable only for its own wrongful conduct. *See Minpeco, S.A. v. ContiCommodity Services, Inc.*, 677 F.Supp. at 157–58 and n. 10; *Centaur Insurance Company v. Port Authority*, No. CV–84–2288, 1987 WL 6224

(E.D.N.Y. Jan. 13, 1987).[10]

Finally, KMG contends that state law governs the issue of Wedtech's liability to it for violation of both the negligence and common law fraud actions. Wedtech agrees that this part of KMG's claim is not disallowed pursuant to section 502(b)(1).

### V.

KMG's request for modification of the automatic stay is bottomed on four considerations: (1) by pursuing actions against KMG, Wedtech has placed itself in the role of an "assailant" rather that the victim, (2) judicial economy would best be served by allowing all Wedtech related claims to be resolved efficiently and expeditiously, (3) the balance of hardships that flows from the stay weighs heavily in favor of KMG and Wedtech will suffer no prejudice if the stay is lifted, and (4) the allegations of misconduct and fraud on the part of Wedtech deprive Wedtech of its entitlement to a continuation of the stay. *See* KMG memorandum of law in support of its cross motion at 2.

Wedtech agrees to lifting the automatic stay to permit KMG to assert counterclaims for purposes of setoff but objects to any further diminution of the stay. Strangely, Wedtech asserts that the burden of proof rests with KMG and has not been met supposedly because KMG has not demonstrated a likelihood of success on the merits, KMG would not be prejudiced by a continuation of the stay, and Wedtech would suffer great hardship from a further lifting of the stay.

Section 362 of the Code provides an automatic stay upon the filing of a petition in bankruptcy. The purpose of the stay is to "give the debtor a breathing spell from his creditors." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–6297. The automatic stay prevents "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay

insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). Where relief from the stay is sought to allow an act against the debtor's property, the party requesting relief from the stay has the burden of proof on the issue of the debtor's equity and the party opposing the relief has the burden of proof on all other issues. But where the stay is sought to be lifted with respect to something other than an act against property, once the movant has demonstrated cause for modification of the stay, the party opposing the relief has the burden of proof. 11 U.S.C. § 362(d) and (g).

In the adversary proceeding where Wedtech is the assailant, it must consent and has consented to be relieved of the protection of the stay at least for purposes of setoff. *See Bohack Corp. v. Borden, Inc.*, 599 F.2d at 1168; *In re Saxon*, 43 B.R. at 67. Wedtech's position on whether KMG may assert counterclaims in order to fix its contingent claim has never been made entirely clear, but it would appear that Wedtech opposes this relief. "However, where, as here, a debtor brings a lawsuit and then invokes the automatic stay to prevent the defendant from asserting counterclaims, the Second Circuit has stated that 'the situation warrants a very thoughtful scrutiny.'" *Saxon Industries*, 43 B.R. at 67, quoting *Bohack*, 599 F.2d at 1168. Here, were the stay not to be lifted in the adversary proceeding for all purposes, KMG would never be able to fix its claim, a result which is highly inequitable in light of Wedtech's suit against KMG.

Turning to the Civil Actions, Wedtech's opposition to the modification of the stay would have been much more compelling under another scenario. Had KMG

---

**10.** We decline Wedtech's eleventh-hour request, submitted after the arguments on the motion, that, without a hearing, we estimate the allowed portion of the claim pursuant to 11 U.S.C. § 502(c) at zero. Estimation requires, at a minimum, an opportunity for a hearing.

simply moved to permit it to fix a claim which may well be largely subordinated, had Wedtech been engaged in rehabilitating, had Wedtech not sued KMG and had Wedtech not consented to be a part of and bound by the consolidated discovery in the Civil Actions we might have agreed with Wedtech. Wedtech's consent to consolidated discovery is probably the best proof that the claims in the Civil Actions are necessarily part and parcel of the adversary proceeding in which KMG will counterclaim against Wedtech. Given Wedtech's participation in at least the discovery phase of the Civil Actions, the alleged financial prejudice to it in modifying the stay is far less than in the usual bankruptcy case. But in any event, where the debtor is the initiator of costly litigation, *Bohack* teaches us that the automatic stay should not be invoked to spare the debtor the expense of defending itself. 599 F.2d at 1168.

Moreover, to lift the stay in only the adversary proceeding might hamper Judge Sand's ability to expeditiously and efficiently manage the Wedtech litigation pending before him. Although some of the cases are before him for discovery purposes only, it frequently occurs that the transferee court retains the coordinated cases after pretrial procedures have been completed for purposes of a consolidated trial. 15 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure*, § 3862, at 504 (2d ed. 1986). It may be that Judge Sand will wish to consolidate the adversary proceeding or KMG's counterclaims in that proceeding with the trial of some or all of the Civil Actions. In the context of this bankruptcy case, where the estate is being liquidated through litigation, we see no reason to fetter Judge Sand's power. In addition, to refuse to modify the stay in the Civil Actions might effectively doom KMG to prove the plaintiffs' case and its own case in the adversary proceeding and to prove its own case again in the Civil Actions. In short, KMG has demonstrated ample cause for modification of the stay in the Civil Actions.

Accordingly, the stay will be modified to permit KMG to counterclaim against Wedtech in the adversary proceeding and to implead Wedtech in the Civil Actions. So much of KMG's motion as seeks blanket authority to commence new actions against Wedtech or bring it into actions not yet commenced is denied without prejudice to an application for relief from the stay at such time as the necessity arises.

Settle order in accordance with this opinion.