COX, Circuit Judge:
These Chapter 11 reorganization proceedings are before the court on appeals from an order of the court below disallowing as contingent certain of the appellants’ claims against the appellees’ bankruptcy estates. We affirm.
BACKGROUND
Appellees, The Charter Company, Charter Oil Company, Charter International Oil Company (collectively referred to as “Charter”) and Independent Petrochemical Corporation (“IPC”), filed voluntary petitions seeking the protection Congress has made available to certain business debtors in Chapter 11 of the Bankruptcy Code.[1] Subsequently, the appellants, Syntex Corporation, Syntex Laboratories, Inc., Syntex Agribusiness, Inc., Syntex U.S.A., Inc. (collectively referred to as “Syntex”), and Northeastern Pharmaceutical and Chemical Company, Inc., Edwin Michaels, John Lee, Bernard Bortz and Milton Turkel (collectively referred to as “NEPACCO”), filed proofs of claim seeking contribution, reimbursement or indemnity from Charter and IPC. Each of the proofs asserted similar claims.
The Syntex and NEPACCO claims arise from eight lawsuits commenced by the *1502 United States, the State of Missouri, and approximately five hundred other named plaintiffs in the United States District Court for the Eastern District of Missouri, and Missouri state courts, to recover over $3 billion for injuries, losses and costs allegedly suffered or incurred due to the disposal of dioxin-bearing waste in Missouri. Though based primarily on state law, several of the actions are brought pursuant to the provisions of the Comprehensive Environmental Response, Compensation and Liability Act (“CERCLA”).[2] The Missouri plaintiffs alleged that Syntex and NEPACCO jointly owned, managed, and controlled the manufacturing facility at which the toxic substance was generated. Through their proofs of claim, Syntex and NEPACCO allege, in turn, that Charter and IPC are jointly and severally liable for any monetary award that might be assessed against them in the Missouri litigation since Charter and IPC arranged for the transportation of the waste. Charter and IPC were named as codefendants in many, but not all, of the Missouri lawsuits. In those cases in which Charter and IPC are parties, Syntex has filed cross-claims against them. However, as of the date that this appeal was orally argued, no judgments had been entered in any of the actions, and neither Syntex nor NEPACCO had made any payment to any of the Missouri plaintiffs.
Charter and IPC objected to the Syntex and NEPACCO proofs of claim. Following a hearing at which the only evidence tendered was the proofs of claim, the Bankruptcy Court disallowed the claims, finding that the proofs, on their face, stated the type of contingent claims for contribution and reimbursement excluded under the Bankruptcy Code. See 11 U.S.C. § 502(e)(1)(B) (1979). Syntex and NEPAC-CO appealed, but to no avail. On December 14, 1987, the District Court affirmed the decision of the Bankruptcy Court, In re The Charter Co., 81 B.R. 644 (M.D.Fla. 1987). Syntex and NEPACCO now appeal to this court.
DISCUSSION
11 U.S.C. § 502(e)(1)(B) provides, in pertinent part, that:
[Tjhe court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for contribution or reimbursement. ...
This statute epitomizes a considered Congressional policy that underlies the Bankruptcy Code as a whole, and Chapter 11 in particular: that is, the bankrupt’s estate should not be burdened by estimated claims contingent in nature. Rather, the debtor should be expeditiously rehabilitated and reorganized, thereby providing the bankrupt a fresh start, while simultaneously according fair treatment to creditors by paying ascertainable claims as quickly as possible. See, e.g., NLRB v. Bildisco and Bildisco, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984); S.Rep. No. 989, 95th Cong., 2d Sess. 1, 9-12, 65, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5795-98, 5851; 3 Collier on Bankruptcy ¶ 502.05[1] (15th ed. 1979). Syntex and NEPACCO request, in effect, that we contravene this policy by allowing their claims which, on their face, are merely estimated and purely contingent. This we refuse to do.
Each of the appellants’ proofs of claim state that “[i]f one or more of them is held liable ... for all or part of the alleged damages, losses and costs suffered or incurred by the [Missouri] plaintiffs, ... then the debtors are jointly and severally liable to [Syntex and NEPACCO] in indemnity ... or, alternatively, in contribution_” These claims fall within the ambit of § 502(e)(1)(B). All are claims for reimbursement [3] or contribution pursuant to 42 *1503 U.S.C. § 9613(f)(1) and, as alleged by the appellants themselves, the claims are ones for which Syntex and NEPACCO are liable with the debtor. Additionally, the claims were contingent at the time they were disallowed by the Bankruptcy Court. Any rights that Syntex and NEPACCO may have to indemnity or contribution from Charter and IPC depend entirely on the success of the plaintiffs against the appellants in the still-pending Missouri litigation.
Syntex and NEPACCO seek to avoid the mandate of § 502(e)(1)(B) by arguing that theoretically there may be private party claims that they can assert against the appellees which are not for contribution and with respect to which they may not be jointly liable with Charter and IPC. Absent the requisite joint liability, so their argument goes, the claims are not subject to disallowance. Specifically, Syntex and NEPACCO assert that they could voluntarily undertake remedial actions to reduce or eliminate the threat of hazardous waste and, pursuant to CERCLA, recover the costs incurred in responding to the threat from the person ultimately responsible for the hazard. See 42 U.S.C. § 9607(a)(4)(B) (Supp.1988).
We need not consider the hypothetical claims which Syntex and NEPACCO might assert, however, since their proofs of claim in this case are not of that type. Instead of alleging recompense due under CERC-LA for response costs incurred directly by them, Syntex and NEPACCO merely allege in their proofs of claim that they are entitled to compensation or reimbursement for response costs incurred by the Missouri plaintiffs for which Syntex and NEPACCO may be ultimately adjudged liable. Thus, these admittedly contingent claims[4] are, despite the appellants’ argument, also ones for which Syntex and NEPACCO are necessarily “liable with the debtor.”
Having concluded that the appellants’ contingent CERCLA contribution claims are of the kind excludable under § 502(e)(1)(B), we address the contention that disallowance of those claims pursuant to that section of the Bankruptcy Code contravenes the congressional policy reflected in 42 U.S.C. § 9613(f)(1). Our analysis begins with the policies and goals underlying Congress’ enactment of CERC-LA, and its subsequent addition to that legislation of a right to contribution.
CERCLA is the product of a three year bipartisan congressional effort to respond to the proliferation of unsafe hazardous waste disposal sites throughout the country. It was designed primarily to protect and preserve the public health, and the environment. See H.R.Rep. No. 1016, 96th Cong., 2d Sess. 1, 17-18, 25, 33, reprinted in 1980 U.S.Code Cong. & Admin.News 6119-6120, 6128, 6136. Congress initially chose to attempt to achieve these goals through comprehensive governmental regulation of and participation in the cleanup of the disposal sites. Moreover, CERCLA shifted the burden of financing the remedial efforts to the persons responsible for the pollution. See id., at 6119-6120, 6136-6138.
It became evident in the ensuing years that the threat of toxic waste had not been abated to Congress’ satisfaction. The Environmental Protection Agency had neither the funding nor the personnel to cope with the evergrowing toxic pollution problem. Recognizing this, Congress amended CERCLA via the Superfund Amendments and Reauthorization Act of 1986.[5] These amendments were intended to promote expeditious and thorough cleanup of hazardous waste sites by drawing more heavily upon the vast technical and financial resources of the private sector. See H.R. Rep. No. 253, 99th Cong., 1st Sess. 100, reprinted in 1986 U.S.Code Cong. & Admin.News 2835, 2882. It was hoped that the enactment of extensive settlement procedures would encourage private parties to assume the financial responsibility for a cleanup prior to the determination of who necessitated it. 42 U.S.C. § 9613(f)(1), the statute codifying the right to contribution, facilitates this worthy goal. As stated by *1504 the House Committee on Energy and Commerce:
[§ 9613(f)(1)] should encourage private party settlements and cleanups. Parties who settle for all or part of a cleanup or its costs, or who pay judgments as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement. Private parties may be more willing to assume the financial responsibility for some or all of the cleanup if they are assured that they can seek contribution from others.
H.R.Rep. No. 253, 99th Cong., 1st Sess. 80, reprinted in 1986 U.S.Code Cong. & Admin.News 2835, 2862.
With the legislative history of both CERCLA and § 502(e)(1)(B) of the Bankruptcy Code in mind, we conclude that the appellants’ contention that disallowance of their proofs of claim is inconsistent with the congressional policy reflected in CERC-LA is without merit. The cleanup relevant to the Missouri litigation has been completed, and once those cases are concluded, the responsibility for the damage should be substantially, if not totally, apportioned. Thus, § 502(e)(1)(B), when applied to the facts of this case, does not impermissibly contravene or inhibit the policies and goals underlying the promulgation of CERCLA and the Superfund Amendments. In fact, the bankruptcy statute’s prohibition on purely contingent claims such as those asserted here would seem to encourage, rather than discourage, the expeditious cleanup of hazardous waste disposal sites and the prompt liquidation of claims arising therefrom since those seeking contribution will have to incur the expenses associated with a cleanup, or pay pursuant to a judgment or negotiated settlement, prior to stating an allowable claim to a bankrupt’s estate.
CONCLUSION
For the reasons discussed above, the decision of the district court is AFFIRMED.

. 11 U.S.C. §§ 1101-1174 (1979).

. 42 U.S.C. §§ 9601-9675 (1983 & Supp.1988).

. Syntex and NEPACCO concede the synonymity of claims for indemnity, which they assert in their proofs of claim, and claims for reimbursement; any legalistic distinctions between the two do not make a difference in this case.

. Each proof states that the claim asserted therein is contingent.

. Pub.L. No. 99-499, 100 Stat. 1613 (codified in scattered sections of 26 U.S.C. and 42 U.S.C.).