**In re AMATEX CORPORATION, Debtor.**

**Bankruptcy No. 82-05220S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 29, 1990.

Cheryl A. Ingram, Philadelphia, Pa., for debtor.

William J. Weiss, Philadelphia, Pa., for Asbestos Corp. Ltd. and Bell Asbestos Mines Ltd.

Pace Reich, Philadelphia, Pa., for Health Claimants Committee.

James M. Matour, Philadelphia, Pa., for Guardian ad litem.

David Zalesne, Philadelphia, Pa., for Carey Canada, Inc. and The Celotex Corp.

Myron A. Bloom, Philadelphia, Pa., for Unsecured Creditors' Committee.

William A. Meehan, Philadelphia, Pa., Guardian ad litem.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Resolution of the instant objections by the Debtor, a former manufacturer of products containing asbestos, to a series of claims filed by co-obligors of claims for asbestos-related damages requires us to consider the scope of 11 U.S.C. § 502(e)(1)(B), which requires disallowance of contingent claims for reimbursement or contribution from a debtor. Following the lead of our colleague, the Honorable Bruce Fox, in *In re Pacor, Inc.*, Bankr. Nos. 86-03251F and 86-03252F (Bankr.E.D.Pa. Oct. 25, 1989), we conclude that the scope of § 502(e)(1)(B), in conjunction with 11 U.S.C. § 509(a), operates to disallow any contingent co-liability, even if that co-liability has not been judicially established, unless the co-obligor pays the liability and becomes subrogated to the rights of the underlying creditor therefor. Since the claimants here did not pay the common underlying creditor, the objections must be sustained and the claims disallowed.

The history of this bankruptcy case is set forth in two recent decisions arising from the efforts of the Debtor to bring the proceeds of its liability insurance policies into the estate as a substantial resource for the funding of a Plan of Reorganization. *See In re Amatex Corp., Amatex Corp. v. Aetna Casualty & Surety Co.*, 107 B.R. 856, 859-62 (E.D.Pa.1989) (adopting Report and Recommendations of Bankruptcy Judge of Oct. 10, 1989) (hereinafter "*Amatex II*"); and *In re Amatex Corp.*, 97 B.R. 220, 221-13 (Bankr.E.D.Pa.), *aff'd sub nom. Amatex Corp. v. Stonewall Insurance Co.*, 102 B.R. 411 (E.D.Pa.1989) (here-

inafter "*Amatex I*"). In those Opinions, we noted that this case, filed on November 1, 1982, had been largely inactive between April, 1985, until early 1988, when the court stimulated its progression. Since early 1988, counsel had proceeded to bring this case into shape for potential confirmation of a consensual Plan of Reorganization. The decision in *Amatex II* represented the consummation of the Debtor's efforts to recover proceeds from the insurers. On October 25, 1989, we approved the Debtor's Third Amended Disclosure Statement and established February 15, 1990, as the date to consider confirmation of its Third Amended Plan.

The process of filing objections to certain of the thousands of proofs of claim filed against the Debtor was commenced on August 25, 1989. The instant objections to the claims of Asbestos Corporation Ltd. (Claim No. 9723) and Bell Asbestos Mines Ltd. (Claim No. 9724) were filed on September 12, 1989 (hereinafter these claims are referred to collectively as the "Bell claims" and those claimants as the "Bell claimants"), and the objections to the claims of Carey Canada, Inc. (Claim No. 5329) and Celotex Corp. (Claim No. 5330) were filed on September 27, 1989 (hereinafter these claims are referred to collectively as the "Celotex claims" and those claimants as the "Celotex claimants"). All of these claims recited unliquidated sums for which the respective claimants may be liable jointly with the Debtor on asbestosis claims and concerning which asbestosis claimants consequently may have rights of contribution or indemnity against the Debtor. After two listings of each set of objections without resolution, a method for deciding the objections to the Bell claims was reduced to an Order of November 28, 1989, contemplating the filing of a Stipulation of Facts and briefing through December 22, 1989. On December 7, 1989, we entered a similar order regarding resolution of the Celotex claims, which also was to be completed on December 22, 1989.

Almost identical brief Stipulations of Facts were filed in reference to the Bell claims and the Celotex claims. Therein, it was recited that each claim was based upon rights for contribution, indemnity, and/or reimbursement from the Debtor for amounts for which asbestosis claimants may be liable. No judicial determination nor liquidated judgments have been entered against claimants or the Debtor holding them jointly and severally liable for asbestos-related injuries which would give rise to a claim for contribution. The claimants have not paid any amount of any claims asserted jointly and severally against claimants and the Debtor. Finally, the claimants do not allege any of their own injuries or damages from the Debtor, as opposed to claims for reimbursement or contribution.

In each objection, the Debtor asserted, alternatively, that either (1) it was not indebted to the claimant, or (2) that the claim should be disallowed on the basis of 11 U.S.C. § 502(e)(1)(B). Section 502(e)(1) of the Code provides as follows:

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

■ The principal argument advanced by both the Bell claimants and the Celotex claimants is that § 502(e)(1)(B), being appli-

cable to only "an entity that *is* liable with the debtor" (emphasis added), does not apply to them, because they have not been determined to actually *be* liable with the debtor as of the date of the bankruptcy filing and, due to the automatic stay, as of the present. The Celotex claimants, in addition to presenting this argument in a somewhat more elaborate manner than the Bell claimants, also argue that decisions contrary to its position in other jurisdictions are entitled to reduced weight in light of the presence of the allegedly-relevant controlling decision of the Court of Appeals in *In re M. Frenville Co.*, 744 F.2d 332, 336–37 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in this jurisdiction. In *Frenville,* the court, in a holding widely discredited elsewhere, *see, e.g., Grady v. A.H. Robins Co.,* 839 F.2d 198, 201 (4th Cir.1988), concluded that a "claim" for contribution or indemnification did not arise until a right to payment against the claimant existed, and that, since such a right did not arise pre-petition under the facts before it, the automatic stay did not apply to suit brought by a putative indemnitee against the putative indemnitor-debtor.

■ We believe that the plausibility of the claimants' defense must be measured in light of the treatment which the Code gives to contingent claims generally. Pursuant to 11 U.S.C. § 502(c)(1), a contingent claimant is said to generally be entitled to file a claim, but the amount of the claim is subject to estimation by the bankruptcy court. *See, e.g., Bittner v. Borne Chemical Co.,* 691 F.2d 134, 135–36 (3d Cir.1982); *In re Andrews,* 78 B.R. 420, 425 (Bankr.E.D.Pa. 1987); and *In re Baldwin–United Corp.,* 55 B.R. 885, 896–902 (Bankr.S.D.Ohio 1985). We note that such claims are often fragile in the face of the estimation process and valued at zero. *See Bittner, supra,* 691 F.2d 136–39; and *Baldwin–United, supra,* 55 B.R. at 896–902.

The asbestosis victims who are plaintiffs in any lawsuits brought against the Debtors and, normally, the instant claimants as well, would be entitled to invoke the estimation process. However, the Code further references claims which are not only contingent but are also in the nature of claims for reimbursement or contribution. The Code sections which address such claims are 11 U.S.C. § 502(e)(1), which is reproduced at page 169 *supra,* and 11 U.S.C. § 509, which provides as follows:

§ 509. Claims of codebtors

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

(A) allowed under section 502 of this title;

(B) disallowed other than under section 502(e) of this title; or

(C) subordinated under section 510 of this title; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

The operation of these two Code sections, in tandem, is clear. A claim for reimbursement or contribution "is entitled to no better status than the claim of a creditor assured by such surety." 124 CONG.REC. S17410–11 (daily ed. Oct. 6, 1978); 124 CONG.REC. H11094 (daily ed. Sept. 28, 1978), reproduced in 3 COLLIER ON BANKRUPTCY, ¶ 502.05, at 502–83 to 502–84 (15th ed. 1989). If the underlying

creditor's claim is disallowed, then the claim of the indemnitor or contributor in connection with such a claim must be disallowed. 11 U.S.C. § 502(e)(1)(A). The claim of the indemnitor or contributor is, however, subordinated to the claim of the underlying creditor. 11 U.S.C. § 509(c). If the indemnitor or contributor pays the underlying creditor's claim, it is then subrogated to the underlying creditor's rights against the debtor. 11 U.S.C. §§ 502(e)(1)(C), 509(a); *In re Sensor Systems, Inc.*, 79 B.R. 623 (Bankr.E.D.Pa. 1987); 124 CONG.REC., *supra*, S17411, H11094; and 3 COLLIER, *supra*, ¶ 502.05, at 502–84. In the event that such subrogation results, the claim of the indemnitor or contributor is then determined in the same manner as that of the underlying creditor. 11 U.S.C. § 502(e)(2).

It is in this context that we must interpret 11 U.S.C. § 502(e)(1)(B). The only Code sections which address the rights of indemnitors, contributors, or parties jointly liable or potentially jointly liable with debtors to file claims are § 502(e) and § 509. 3 COLLIER, *supra*, ¶ 509.01, at 509–2; S.REP. NO. 989, 95th Cong., 2d Sess. 73 (1978); and H.REP. NO. 595, 95th Cong., 2d Sess. 358 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Given the obvious intention of the Code draftspersons to cover the entire field of treatment of claims of indemnitors and contributors in 11 U.S.C. §§ 502 and 509, it appears to us illogical to give § 502(e)(1)(B) a narrow reading, based on the tense of the verb used in § 502(e), *i.e.*, "is," as opposed to "could be." We therefore consider the reading of § 502(e)(1)(B) suggested by the instant claimants most improbable. Congress clearly meant to include all situations wherein indemnitors or contributors could be liable with the debtor within the scope of § 502(e)(1)(B).

A contrary reading of § 502(e)(1)(B) in the manner urged by the instant claimants would be, as Judge Fox suggested in *Pacor, supra*, slip op. at 5, "counter-intuitive." One of the principles of § 502 is that certain contingent claims, contrary to the conclusion that such claims were not "provable" under the Bankruptcy Code,

can be allowed, estimated, and the obligations of same discharged in a bankruptcy case. 3 COLLIER, *supra*, ¶ 502.03, at 502–71 to 502–75. However, some lines must be drawn as to whether certain types of claims are too contingent to ever be allowed. A debtor's estate may therefore "not be burdened by estimated claims" which are of such a degree as to be too contingent in nature. *In re Charter Co.*, 862 F.2d 1500, 1502 (11th Cir.1989). Preventing the underlying contingent claimant *and* the indemnitor of or contributor to the underlying contingent claimant to *both* recover claims is one of the purposes, we believe, of § 502(e)(1)(B). There are several logical reasons, then, for the conclusion that § 502(e)(1)(B) cannot be read narrowly: (1) Duplicative claims covering the same liability could otherwise be allowed; (2) The claims of indemnitors or contributors are simply too contingent to be allowed; and (3) As observed in *In re Charter Co.*, 81 B.R. 644, 648 (M.D.Fla.1987), *aff'd*, 862 F.2d 1500 (11th Cir.1989), a debtor's estate containing numerous contingent claims subject to indemnity or contribution would otherwise be impossible to administer because huge, indeterminate sums might have to be reserved to cover such claims if they would materialize in the future.

The invocation of the *Frenville* holding merely heightens the implausibility of the claimants' reading of § 502(e)(1)(B). *Frenville limits* the allowance of derivative claims. If the claimants are correct in their assertion that *Frenville* renders their claims unallowable because of their high degree of contingency, then their claims could not be allowed and the Debtor's objections would prevail for this reason. Moreover, as the Debtor observes, the court, in *Frenville*, 744 F.2d at 337 n. 8, allowed that "overriding federal law" may prevail in a case involving, like the instant one, asbestosis claims. We are therefore inclined to apply § 502(e)(1)(B) and not the holding of *Frenville* in deciding the instant contested matters. However, we point out that the holding of *Frenville* would support disallowance, not allowance, of the

instant claims.[1]

The argument of the instant claimants ultimately boils down to a contention that, irrespective of what Congress *meant* in enacting § 502(e)(1)(B), its use of the word "is" requires us to conclude that their joint liability with the Debtor must be judicially established to trigger the applicability of § 502(e)(1)(B). This argument is reminiscent to that of the plan proponent in *In re 222 Liberty Associates*, 108 B.R. 971, 979 (Bankr.E.D.Pa.1990), who insisted that, applying the reasoning of *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (which the instant claimants do not cite), the language of a Code section is so apparent in its meaning that it is error to even examine the context of that language, and the Code section must be applied literally irrespective of the logical nonsense of such an interpretation. As in that case, *id.*, 108 B.R. at 978–80 we refuse to so read *Ron Pair* and we decline to interpret the instant Code section, § 502(e)(1)(B), in a manner which renders it nonsensical just because it could have been written more clearly.

We note that the claimants are unable to cite any cases that support their reading of § 502(e)(1)(B), and are confronted with numerous authorities to the contrary. Unabashed, they resort to criticizing the alleged "analytical infirmities" of the numerous cases which opt for a broader reading of § 502(e)(1)(B) than they wish to give it. *See Charter, supra*, 862 F.2d at 1502–04; *Pacor, supra*, slip op. at 4–7 (Judge Fox's analysis is characterized by the Celotex claimants as not only "flawed" but "inexorably absurd"); *In re Wedtech Corp.*, 87 B.R. 279, 283–89 (Bankr.S.D.N.Y.1988) (per BROTZMAN, J.); *In re Wedtech Corp.*, 85 B.R. 285, 289–93 (Bankr.S.D.N.Y.1988) (per BUSCHMAN, J.); *In re Provincetown–Boston Airlines, Inc.*, 72 B.R. 307, 309–10 (Bankr.M.D.Fla.1987); *In re Johns–Manville Corp.*, 57 B.R. 680, 692 n. 6 (Bankr.S.

D.N.Y.1986) (per LIFLAND, J.); and *Baldwin–United, supra*, 55 B.R. at 894–95.

As Judge Fox suggests in *Pacor, supra*, slip op. at 5–6, of particular interest is the decision in *In re Early & Daniel Industries, Inc.*, 104 B.R. 963, 965–68 (Bankr.S. D.Ind.1989), wherein the court rejected the converse of the argument made here: that § 502(e)(1)(B) should not apply to a situation in which joint liability *was* established pre-petition and hence was not contingent, but the amount of the underlying claim was not established, and hence the claim was merely unliquidated. The position of the *Early & Daniel* claimants had, in our view, more of a logical basis than the argument advanced by the claimants here. The guarantor's claim there was arguably *less* contingent than the scope of § 502(e)(1)(B) contemplated not, as here, *more* contingent. Nevertheless, the *Early & Daniel* court, 104 B.R. at 964–67, read § 502(e)(1)(B) broadly and disallowed the claim on the basis of that Code section. In the alternative, the court stated that, if it were not obliged to disallow the claim under § 502(e)(1)(B), it would nevertheless have estimated its value at zero because of the requirement of 11 U.S.C. § 509(c) that it subordinate the claim. *Id.* at 968. *Cf. Baldwin–United, supra*, 55 B.R. at 896–911 (court estimates contingent contribution claims at zero as an alternative to disallowing them under § 502(e)(1)(B)). If we were compelled to estimate the instant claims, their extremely contingent character would probably relegate them to the same fate.[2]

As in *222 Liberty, supra*, 108 B.R. at 980, we are inclined to characterize the Celotex claimants' verbal abuse of consistent reasoning of courts contrary to that urged by the claimants as "contrived outrage." We believe that, when viewed in its proper context in the Code, § 502(e)(1)(B) must be read as Judge Fox and all other known authorities have read it: as requir-

---

**1.** This may have been the reasoning of the Debtor in alternatively contending that it was not *indebted* to the claimants.

**2.** In fact, it might be argued that § 502(e)(1)(B) is merely a shorthand way of providing that

certain claims are so contingent that, if estimated, their value would have to be pegged at zero *in any event.* Therefore, *the* estimation process is eliminated as superfluous and such claims are simply disallowed.

ing disallowance of any claim based upon the right of indemnity or contribution as to a contingent claim, whether the joint liability of the debtor and the putative claimant has been judicially determined pre-petition or not.

We shall therefore enter an Order disallowing the claims in issue.