**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2326
_____

IN RE: CARIBBEAN PETROLEUM CORP., et al.,
Debtor


INTERTEK, USA, INC.,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil No. 1-12-cv-00898
District Judge: Honorable Leonard P. Stark

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 19, 2013

Before: JORDAN, VANASKIE, and GREENBERG, *Circuit Judges*.

(Filed: May 6, 2014)

_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Intertek USA, Inc. ("Intertek") appeals the District Court's order affirming the

decision of the Bankruptcy Court for the District of Delaware, which granted the motion

of Liquidation Trustee FTI Consulting, Inc. ("FTI") to disallow Intertek's proofs of claim

against the Debtors pursuant to 11 U.S.C. § 502(e)(1)(B).[1] Section 502(e)(1)(B) is a Bankruptcy Code provision "which requires disallowance of contingent claims for reimbursement or contribution from a debtor." *In re Amatex Corp.*, 110 B.R. 168, 168 (E.D. Pa 1990). Because Intertek seeks contribution from the Debtors in the event it is ultimately found liable in civil litigation which remains ongoing, the Bankruptcy Court as well as the District Court found that Intertek's claims were contingent and therefore disallowed under § 502(e)(1)(B).

Intertek asserts that the Bankruptcy and District Courts incorrectly applied the Bankruptcy Code to disallow claims against a post-confirmation liquidation trust, erroneously relied on FTI's unsupported factual allegations, violated principles of Delaware trust law, and deprived Intertek of its property interest without due process. Finding no merit to these contentions and concluding that the Intertek proofs of claim at issue plainly satisfy the criteria for disallowance under § 502(e)(1)(B), we will affirm.

I.

We write primarily for the parties to the action. Therefore, we set forth only those facts necessary to our analysis.

The Debtors operated petroleum products businesses based in Bayamon, Puerto Rico. In October 2009, massive explosions at Debtors' facilities resulted in the cessation of normal business operations. Parties alleging injury and property damage arising out of

---

[1] The Debtors in this action are Caribbean Petroleum Corporation, along with its two affiliated companies, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation.

these explosions initiated a flurry of litigation directed against potentially-liable defendants, including the Debtors and Intertek. That litigation was procedurally consolidated under one state court and two federal court actions ("Consolidated Actions").

In August 2010, the Debtors commenced cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Given the severity of the damage caused by the explosions and the Debtors' substantial liability exposure, the Debtors sought approval of a plan of liquidation. On May 9, 2011, the Bankruptcy Court entered an order confirming the Debtors' joint plan of liquidation ("the Plan"), effective June 3, 2011. Intertek was served with notice of the Plan and did not object. Under the terms of the Plan, the Debtors' were dissolved and the Caribbean Petroleum Liquidation Trust ("the Trust") was established. FTI was appointed as Liquidation Trustee. The Trust's corpus consisted of all of the Debtors' residual assets which, pursuant to the Plan, were to be distributed to its beneficiaries, the holders of "Allowed Claims . . . against the Debtors."[2] (App. 591.) Intertek is not a beneficiary of the Trust.

---

[2] The Plan defines an "Allowed" claim as "(a) any Claim that has been listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed, (b) any properly and timely filed, liquidated, noncontingent Claim with respect to which no objection to the allowance thereof has been filed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (c) any Claim allowed pursuant to the Plan, the Confirmation Order, the BPPR Settlement Order, or a Final Order of the Bankruptcy Court." (App. 494.)

The Plan provided for a Claims Administration Procedure for payment of Trust funds to claimants. One aspect of the Claims Administration Procedure was a dispute resolution system that included mediation and, if mediation was unsuccessful, arbitration. The Claims Administration Procedure and the Plan both reserved the Trustee's "right to file an objection to any Tort Claim with the Bankruptcy Court to the extent that the resolution of such objection would not impair any right of the holder of such Tort Claim to a jury trial." (App. 311, App. 554.)

A principal component of the Trust assets was the money received as a result of a settlement with the Debtors' liability insurer, Chartis Insurance Company. Under the terms of the settlement, Chartis paid $24 million in exchange for the Debtors selling back the insurance policies to Chartis free and clear of any liens, encumbrances, claims, or interests. Intertek was provided with notice of the settlement agreement and did not object to the Debtors' motion for Bankruptcy Court approval of the agreement. In May 2011, the Bankruptcy Court approved the settlement. The order specified that any claims that could have been made against Chartis pursuant to the insurance policies were thereby channeled into claims against the Chartis funds held by the Trustee, which would be distributed pursuant to the Plan.

In September of 2011, Intertek filed three proofs of claim against the Debtors, asserting that "in the event any court should find Intertek USA liable for any damages in the [Consolidated] Actions," Intertek would be "entitled to contribution and/or indemnity from [Debtors] . . . ." (Supp. App. 1380, 1383, 1386.) The attachment to the proofs of claim also noted that "[a]t this time, the amount of said claims for contribution and/or

4

indemnity against [Debtors] is unliquidated and unknown and Intertek reserves its right to seek expenses and/or amend claim amount and classification." *Id*.

In March 2012, FTI filed the *Eighth Omnibus Objection of Caribbean Petroleum Liquidation Trustee to Certain Reimbursement and Contribution Claims*. The objection sought the disallowance of twenty-one proofs of claim filed by claimants who are or expect to be defendants in the Consolidated Actions, including disallowance of the three proofs of claim that had been filed by Intertek. The challenged proofs of claim sought billions of dollars for indemnification or contribution in the event that the claimants were found liable in the Consolidated Actions. FTI sought to exclude these claims under § 502(e)(1)(B) of the Bankruptcy Code, which provides for the disallowance of any claims for reimbursement or contribution for which the Debtor and claimant are potentially co-liable that are "contingent as of the time of allowance or disallowance . . . ." 11 U.S.C. § 502(e)(1)(B). FTI sought disallowance of these claims because otherwise it would be required to reserve such a large portion of the Trust assets that any interim distribution for allowed claims would be de minimis. Intertek opposed the motion, arguing that granting the Trustee's objection "would be premature and inequitable." (App. 708.)

Following a hearing, the Bankruptcy Court found that the all of the statutory requirements for disallowing a claim pursuant to § 502(e)(1)(B) were satisfied. The Bankruptcy Court rejected Intertek's arguments that the objection was premature, noting that no case law supported denying a § 502(e)(1)(B) objection on that basis. The Bankruptcy Court included language in its order specifying that Intertek maintained the

5

right to move for reconsideration under § 502(j) if its claims were no longer excludable under § 502(e)(1)(B).

On appeal, the District Court affirmed, concluding that the Claims Administration Procedure gave the Trustee the express right to file objections to claims and that the § 502(e)(1)(B) statutory criteria for disallowance of the claims at issue were "indisputably satisfied." (App. 18.) Intertek had also sought to challenge the § 502 objection on appeal as contrary to the stated purpose of the Claims Administration Procedure. The District Court found that this challenge had been waived because Intertek failed to present it to the Bankruptcy Court in the first instance. This appeal followed.

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334, and the District Court had appellate jurisdiction under 28 U.S.C. §§ 158 and 1334. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d).

"Because the district court sat as an appellate court reviewing an order of the bankruptcy court, our review of its determinations is plenary." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998). "In reviewing the bankruptcy court's determinations, we exercise the same standard of review as the district court." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). Specifically, "we review the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Trans World*, 145 F.3d at 131.

## III.

Section 502(e)(1)(B) of the Bankruptcy Code, in pertinent part, states that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution." This provision "epitomizes a considered Congressional policy that . . . the bankrupt's estate should not be burdened by estimated claims contingent in nature." *In re Charter Co.*, 862 F.2d 1500, 1502 (11th Cir. 1989).

Intertek argues that § 502(e)(1)(B) is not applicable in the context of a post-confirmation liquidation trust. This argument is belied by the language of the statute and the specific record of this case. Nothing in the text of § 502(e)(1)(B) suggests that a Bankruptcy Court is prohibited from disallowing claims in the post-confirmation context. *See In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55-56 (Bankr. D. Del. 2001) (concluding that the filing of a liquidation plan was "insignificant for the purposes of determining the applicability" of § 502(e)(1)(B) to the claims at issue). Intertek fails to offer any authority to support the proposition that § 502(e)(1)(B) does not apply in this context.

We also note that such a restriction would be particularly inappropriate in this case, where the Claims Administration Procedure and the Plan both provided that the Trustee reserved the right to file objections with the Bankruptcy Court following the Trust's confirmation. Although Intertek was served with notice of the Claims Administration Procedure as well as the Plan, and had the opportunity to object to either prior to the Bankruptcy Court's approval, it never did so.

Finding no obstacle to applying § 502(e)(1)(B) in the post-confirmation context, we now turn to its application to Intertek's claims. Courts have distilled from § 502(e)(1)(B) three criteria that must be satisfied for a claim to be disallowed: "(i) the claim must be contingent, (ii) the claim must be for reimbursement or contribution, and (iii) the debtor and the claimant must be co-liable on the claim." *In re Touch America Holdings*, 409 B.R. 712, 715-16 (Bankr. D. Del 2009).

These criteria are all satisfied in this case. Intertek's own attachment to its proofs of claim demonstrates that the claims are currently contingent, as Intertek asserts a right to contribution "in the event any court should find Intertek USA liable for any damages in the [Consolidated] Actions . . . ." (Supp. App. 1380, 1383, 1386.) Intertek acknowledges that the "amount of said claims for contribution and/or indemnity against [Debtors] is unliquidated and unknown." *Id*. Turning to the second prong, Intertek seeks recovery in the event it is found liable for damages arising out of the explosions at the Debtors' facilities, presenting a paradigmatic claim for reimbursement or contribution. As to the third prong, the claims at issue are ones for which the Debtors and claimant are potentially liable as co-defendants, satisfying the final requirement of § 502(e)(1)(B). *See In re Amatex Corp.*, 110 B.R. 168, 171 (Bankr. E.D. Pa 1990) (concluding that "Congress clearly meant to include all situations wherein indemnitors or contributors could be liable with the debtor within the scope of § 502(e)(1)(B)"). Because § 502(e)(1)(B) states in mandatory language that "the court shall disallow any claim" where the above criteria are satisfied, the Bankruptcy Court did not err in disallowing Intertek's claims.

## IV.

Intertek contests the Bankruptcy Court's finding that the disallowance of Intertek's unliquidated claims would expedite distribution to holders of allowed claims against the Debtors. Indeed, a purpose of Section 502(e)(1)(B) is to enable "distribution to unsecured creditors without a reserve for . . . contingent claims when the contingency may not occur until after the several years it often takes to litigate the underlying lawsuit." *In re Wedtech Corp.*, 85 B.R. 285, 290 (Bankr. S.D.N.Y. 1988). Disallowance of Intertek's claims is consistent with this purpose because there is no need to establish a substantial reserve that could not be accessed to pay allowed claims that have been reduced to a sum certain. In any event, nothing in the statute requires the Bankruptcy Court to make a determination that disallowance of the claims at issue will in fact expedite distribution to creditors with liquidated claims. Section 502(e)(1) simply states that courts "shall disallow" contingent claims for reimbursement or contribution that are made by an entity that is jointly liable with the debtor. Because the Bankruptcy Court was not required to find that disallowance of Intertek's claims would expedite contribution to holders of liquidated claims in order to apply § 502(e)(1)(B), any alleged error made by the Bankruptcy Court in so concluding is not a basis for overturning the disallowance on appeal.

Intertek also argues that FTI violated Delaware trust law in seeking to disallow claims under § 502(e)(1)(B). Intertek alleges that seeking disallowance of claims was inconsistent with, or *ultra vires* to, the Trust's purpose, as stated in the Claims Administration Procedure, of working "to accelerate the liquidation and allowance of

9

Tort Claims." (App. 556.) The District Court found that the trust law objection had been waived, as it had not been raised sufficiently before the Bankruptcy Court.

"For an issue to be preserved for appeal, a party 'must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.'" *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 262 (3d Cir. 2009) (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)). After a careful review of the record before the Bankruptcy Court, we agree with the District Court that Intertek waived any objections premised on Delaware trust law by not raising them before the Bankruptcy Court. Therefore, we will not address Intertek's trust law argument on appeal.

Finally, Intertek argues that the Bankruptcy Court's disallowance of its claims deprived it of a property interest in the Chartis settlement funds without due process. We disagree. Intertek was given notice of the joint plan of liquidation and the claims administration procedure and had the opportunity to object before the Bankruptcy Court. Intertek was also given notice of the terms of the Debtors' settlement buyback agreement with Chartis and had the opportunity to object before the Bankruptcy Court. Finally, Intertek received notice and an opportunity to be heard in response to the Trustee's disallowance motion under § 502(e)(2)(B). These procedures all ensured that Intertek's due process rights were honored. Additionally, the Bankruptcy Court's order provided

that Intertek maintained the right to move for reconsideration under 11 U.S.C. § 502(j),[3] thereby preserving further procedural rights for Intertek should its claims become ascertainable at some point in the future.

V.

Because the Bankruptcy Court and District Court correctly applied § 502(e)(1)(B) to disallow Intertek's contingent claims against the Trust, we will affirm.

---

[3] Section 502(j) provides, in pertinent part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."